### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | |
|---|---|
| VELOCITY COMMUNICATION TECHNOLOGIES, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> TP-LINK CORPORATION PTE. LTD. F/K/A BIG FIELD GLOBAL PTE LTD. F/K/A TP-LINK TECHNOLOGIES (SG) PTE. LTD.; TP-LINK CORPORATION LTD. F/K/A TP-LINK INTERNATIONAL LTD.; LIANZHOU TECHNOLOGIES CO., LTD. F/K/A TP-LINK TECHNOLOGIES CO., LTD.; AND LIANYUE (VIETNAM) CO., LTD., <br><br> *Defendants.* | Civil Action No._____ <br><br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Velocity Communication Technologies, LLC ("Velocity" or "Plaintiff") brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos.: 8,675,570 (the "'570 patent"); 8,260,213 (the "'213 patent"); 8,238,832 (the "'832 patent"); 8,270,343 (the "'343 patent"); 8,213,870 (the "'870 patent"); 8,644,765 (the "'765 patent"); 9,083,401 (the "'401 patent"); 10,200,096 (the "'096 patent"); 8,238,859 (the "'859 patent"); 8,265,573 (the "'573 patent"); and 9,596,648 (the "'648 patent") (collectively, the "patents-in-suit"). Defendants TP-Link Corporation PTE. Ltd.; TP-Link Corporation Ltd.; Lianzhou Technologies Co., Ltd.; and Lianyue (Vietnam) Co., Ltd. (collectively, "TP-Link" or "Defendant(s)") infringe the patents-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

### PLAINTIFF

1.     Plaintiff Velocity Communication Technologies, LLC ("Plaintiff" or "Velocity") is a Delaware limited liability company that holds a pool of over 220 patent assets across 46 distinct

patent families developed by leading pioneers from across the globe in the field of wireless communications, including Marvell Technology, Inc.; NXP Semiconductors N.V.; Freescale Semiconductor, Inc.; Blackberry Ltd.; and ZTE Corporation.

2.      Plaintiff's patent pool includes a significant number of wireless networking patents essential to, and necessarily infringed by, the manufacture, sale, and operation of devices in compliance with the Institute of Electrical and Electronics Engineers (IEEE) 802.11ax standard, also referred to as the Wi-Fi 6 standard ("802.11ax Standard"). Plaintiff's patent portfolio not only includes each of the at-issue United States patents, but also an extensive number of additional U.S. patents not at issue in this case as well as numerous patents issued by the European Patent Office and the China National Intellectual Property Administration, among other foreign patent-issuing government bodies.

3.      Each of the patents-in-suit is necessarily practiced when devices operate in compliance with the 802.11ax Standard.

<u>DEFENDANTS</u>

4.      TP-Link Corporation PTE. Ltd. ("TP-Link Singapore") is a company organized under the laws of Singapore with UEN Registration No. 200517727M. TP-Link Singapore has a registered office address as 7 Temasek Boulevard, #29-03, Suntec Tower One, Singapore 038987. Zhao Jianjun is the Director and Chief Executive Officer of TP-Link Singapore. TP-Link Singapore was formerly known as Big Field Global PTE. Ltd. and before that, TP-Link Technologies (SG) PTE. Ltd. On information and belief, Defendant TP-Link Singapore is a subsidiary of both Ivy Grove Ltd. ("Ivy Grove") and Diamond Creek Global Ltd. ("Diamond Creek"), which are related, affiliated entities.



*Verified Business Listing For TP-Link Corporation PTE. Ltd.,* Singapore Accounting and Corporate Regulation Authority (ACRA) – Business Profile TP Link Singapore Official Business Profile (May 2025) (emphasis added).

5.      The Chief Executive Officer and Director of TP-Link Singapore is Zhao Jianjun, who lists his address as Flat B16/F, Tower 2, The Harbourside Union Square, 1 Austin R.  TP-Link Singapore has submitted numerous requests to the FCC stating that TP-Link products comply with various FCC requirements.  For example, on July 29, 2024, TP-Link Singapore sought authorization to import into and market in the United States from the FCC the BE11000 Access Point—a product accused of infringing each of the patents-in-suit in this action.



*EAP7772-FCC Declaration of Authorization*, TP-LINK SINGAPORE SUBMISSION TO THE FCC (July 29, 2024).

6.    On information and belief, from January 2024 to May 2025, TP-Link Singapore sought FCC Approval for 136 different devices. These devices include at least the following routers that comply with the Wi-Fi 6 Standard (*i.e.*, products accused of infringement in this action): 2BCGWBE550V2, 2BCGWBE900V2, 2BCGWAX10, 2BCGWWR3002X, 2BCGWGE650, 2BCGWAX72V2, 2BCGWBE25OD, 2BCGWGXE75, 2BCGWAX72, 2BCGWAX55, 2BCGWBE400, 2BCGWAX12, 2BCGWA8V2, 2BCGWBE550PRO, 2BCGWEX920, 2BCGWGE550, 2BCGWEX510PRO, 2BCGWEX141, 2BCGWBE805, 2BCGWBE700, 2BCGWFR365, 2BCGWBE230, 2BCGWGE800, and 2BCGWWR1502X.

7.    On information and belief, TP-Link Corporation Ltd. ("TP-Link Hong Kong") (formerly known as TP-Link International Limited) is a private limited company organized under the laws of Hong Kong with its principal place of business at: Suite 901, New East Ocean Centre, Tsim Sha Tsui, Hong Kong, China.  On information and belief, TP-Link Hong Kong is a wholly owned subsidiary of TP-Link Singapore.  On information and belief, from January 2022 to May 2025, TP-Link Hong Kong has sent at least 915,000 lbs. of electronics equipment to the United

States based on a review of publicly available bills of lading.  The below excerpt from a recent bill

of lading shows TP-Link Hong Kong sending 5,725 cartons of networking equipment to the United

States, which arrived in the United States on April 12, 2025.



Bill of Lading OOLU2756191642 (Arrival Date April 12, 2025) (showing 5,725 cartons of merchandise sent from TP-Link Hong Kong to the United States in a single shipment).

8.    TP-Link Hong Kong has obtained FCC certification so that the accused products

can be imported into and marketed in the United States.  In numerous applications to the FCC, TP-

Link Hong Kong has certified that that products comply with all necessary FCC requirements

governing usage in the U.S.  Since January 2024, TP-Link Hong Kong has sought approval for 11

devices compliant with the Wi-Fi 6 Standard (*i.e.*, accused products).  These devices include the

following FCC ID Nos.: 2AXJ4AX55V4; 2AXJ4D230V1; 2AXJ4AIRE5; 2AXJ4HX510V2;

2AXJ4ER605W; 2AXJ4EAP670V2; 2AXJ4EAP650V2; 2AXJ4WA3001; 2AXJ4TXE50UH;

2AXJ4X50OD; 2AXJ4EAP115BRG.  For example, on November 22, 2024, TP-Link Hong Kong

sought approval for its AX3000 Gigabit Wi-Fi 6 Router (which is accused of infringing 10 of 11

of the patents-in-suit in this action) and filed a Declaration of Conformity stating that "Product

which bears the above FCC ID is also compliant with the FCC requirements for sDOC."



*2AXJ4AX55V4 Declaration of Conformity*, TP-LINK HONG KONG SUBMISSION TO THE FCC (November 22, 2024) (emphasis added).

9.     Lianzhou Technologies Co., Ltd., ("TP-Link China") is a privately held company organized under the laws of the People's Republic of China ("PRC").[1]  TP-Link China has its principal place of business at South Building 5 Keyuan Road, Central Zone Science & Technology Park, Nanshan, Shenzhen, PRC, 518057.  In the 9-month period from July 19, 2024 to April 2, 2025, TP-Link China shipped 879,000 lbs of devices comprising 48,541 cartons of electronic equipment to the United Stats for sale.

10.     Lianyue (Vietnam) Co., Ltd. ("TP-Link Vietnam") is a corporation organized under the laws of Vietnam.  TP-Link Vietnam maintains its principal place of business at: Plot B-09, B-10, B-11, B-12, B-13, B-14, Lot Cn7, An Duong Industrial Zone, Hong Phong Ward, Hai Phong,

---

[1] TP-Link China was formerly known as TP-Link Technologies Co., Ltd. and also TP-Link Lianzhou Co. Ltd.  It is a wholly owned subsidiary of Lianzhou International Co., Ltd.  Lianzhou International Co., Ltd. is a wholly owned subsidiary of TP-Link Corporation Ltd.

Hai Phong City, Vietnam.  TP-Link Vietnam's business registration statement identifies that TP-Link Vietnam is a wholly owned subsidiary of TP-Link Singapore.



LIANYUE (VIỆT NAM) COMPANY LIMITED BUSINESS REGISTRATION STATEMENT (May 2025) (translated: corporate owner (current):TP-Link Corporation Pte. Ltd. [*i.e.*, TP-Link Singapore]) (emphasis added).

11.    TP-Link Singapore advertised that it "has commissioned . . . LIANYUE (VIETNAM) Company Limited in Vietnam to handle all product manufacturing."  *BFG Group Announcement,* TP-LINK WEBSITE (September 19, 2023), *available at*: https://www.tp-link.com/uy/press/news/21138/.  U.S. import records corroborate TP-Link's activities in directing the sale of products to the United States.  Between December 16, 2019 and May 23, 2025, 737 bills of lading list TP-Link Vietnam as the shipper of record for goods exported from Vietnam to the U.S.  On information and belief, these records reflect large-scale exports of the infringing products from TP-Link Vietnam's facilities directed to the U.S. market.  For example, one May 2025 shipment comprised 1,996 cartons (approximately 49,978 lbs.) of TP-Link devices.  From

January 2024 to May 2025, TP-Link Vietnam has shipped over 26 million pounds of TP-Link devices to the U.S. market.

12.     TP-Link Singapore, TP-Link Hong Kong, TP-Link China, and TP-Link Vietnam (collectively, "TP-Link" and/or "Defendant(s)") are related entities.  On information and belief, TP-Link Singapore, TP-Link Hong Kong, TP-Link China, and TP-Link Vietnam have acted in concert with respect to the facts alleged herein such that any act of one is attributable to the other and vice versa.

13.     TP-Link is engaged in research, development, manufacturing, importation, distribution, and sales of products and services for home and business networks, including as relevant to this action, Wi-Fi 6 wireless networking infrastructure products.  TP-Link's Wi-Fi 6 products are made outside the United States and are then imported into the United States, distributed via an established distribution channel, and sold to end-users via the Internet and via distribution partners, retailers, and reseller partners.  Those sales occur in the United States and throughout Texas, including in this judicial District.

14.     TP-Link affirmatively touts Wi-Fi 6 technology and its advantages to its prospective customers who purchase Wi-Fi 6 products.  *See, e.g.*, *Meet the 6th Generation of WiFi*, TP-LINK U.S. WEBSITE, *available at*: https://www.tp-link.com/us/wifi6/ ("WiFi 6(802.11ax) is designed to improve speed, increase efficiency and reduce congestion in heavy bandwidth usage scenarios.").

## JURISDICTION AND VENUE

15.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

16.    This Court has personal jurisdiction over TP-Link.  TP-Link conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this judicial District, the State of Texas, and elsewhere in the United States.  TP-Link has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  TP-Link regularly sells (either directly or indirectly) its products within this judicial District.  For example, TP-Link has placed and continues to place infringing products into the stream of commerce via an established distribution channel, such as its partner distributors, with the knowledge or understanding that such products are being and will continue to be sold in this judicial District and within the State of Texas.  TP-Link is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute, due at least to its substantial and pervasive business in this State and this judicial District, including at least part of its infringing activities alleged herein and deriving substantial revenue from goods sold to Texas residents.

17.    On information and belief, Defendants have repeatedly directly shipped the accused products to customers in the United States, and specifically the State of Texas.  Importation records, including bills of lading, confirm that defendants have sent TP-Link devices to customers in the United States.  For example, TP-Link Singapore, in May 2023, sent 17,914 lbs. of TP-Link devices to El Paso Communications Systems, Inc. located at 1630 E. Paisano Dr., El Paso, Texas 79901.  As further example, Bill of Lading No. MEDUDX160275 shows that TP-Link China shipped TP-Link devices from Da Chan Bay in Shenzhen, China via Singapore to the United States for delivery to El Paso Communications Systems, Inc.



BILL OF LADING MEDUDX160275 (Arrival Date May 19, 2023).

18.    TP-Link is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute based on its substantial business activities in the State of Texas and in this judicial District.

19.    TP-Link's infringing activities constitute only a portion of TP-Link's substantial business activities in the State of Texas and in this judicial District.  As alleged herein, the TP-Link Defendants purposefully avails themselves of the privilege of conducting their business activities in the State of Texas and in this judicial District, and, thus, submit themselves to the jurisdiction of this Court.

20.    TP-Link also regularly does and solicits business, engaging in other persistent conduct targeting residents of Texas and residents of this judicial District, and/or derives substantial revenue from infringing goods offered for sale, sold, and imported to and targeting Texas residents and residents of this judicial District vicariously through and/or in concert with its

alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

21.     Defendants further ship and cause to be shipped, into this judicial District, infringing products and/or materials and information instructing others to perform infringing activities, including without limitation customers, employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

22.     Defendants commit acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

23.     TP-Link Systems Inc. is an agent of the Defendants and a California corporation with a mailing address at 10 Mauchly, Irvine, CA 92618.

24.     Through direction and control of these various entities, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

25.     Defendants directly, and via direction and control of or by their related entities, participate in the manufacture, shipping, importing and distribution of the Accused Products to the U.S.  Upon information and belief, Defendants control or otherwise direct and authorize all activities of their subsidiaries and related entities, including, but not limited to U.S.-based TP-Link-affiliated companies. Directly via agents in the U.S. and via at least distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, and

other service providers, Defendants have placed and continue to place infringing TP-Link products into the U.S. stream of commerce. For example, import records show that Defendants deliver TP-Link Products to TP-Link Systems Inc. in the U.S.

26.    TP-Link has an established distribution channel to sell TP-Link products nationwide, including in Texas.  Defendants design, develop, and manufacture the Accused Products and sell them to third-party TP-Link Systems Inc.—Defendants' sole U.S. distributor. TP-Link's distributor, in turn, distributes the products nationwide, including in Texas, subject to the duties and obligations Defendants impose via a Distribution Agreement.

27.    On information and belief, the Distribution Agreement authorizes TP-Link's U.S. distributor to distribute TP-Link products throughout the United States.  The distribution agreement requires TP-Link's U.S. distributor to obtain permission before it uses any TP-Link trademark or intellectual property or enters into any agreement or conducts any activities in the name of TP-Link.  The distribution agreement requires TP-Link Hong Kong to train TP-Link's U.S. distributor employees on the operation of TP-Link products and obligates the U.S. distributor to promote the full range of TP-Link products and maximize sales of those products.  The distribution agreement provides that the U.S. distributor will advertise TP-Link products nationwide and inform TP-Link of all advertisements and promotions, with TP-Link having "the right of written approval."

28.    On information and belief, Defendants have never prohibited or restricted sales to Texas.

29.    On information and belief, TP-Link designs and packages the accused products specifically for the United States market.  As an example, the accused products sold in the United States contain electrical plugs compatible with United States power outlets.  TP-Link products

contain power plugs that are marked as "UL US" certified with an Underwriters Laboratories certification number.  The entities that applied for the "UL US" certification associated with that number are TP-Link Hong Kong and TP-Link China.

30.    On information and belief, TP-Link specifically configures its products for U.S. operation.  There are 13 Wi-Fi channels, only 11 of which are permitted to be used in the United States. Channels 12 and 13 are permitted in certain other countries, but not in the U.S.  Before selling products in the United States, TP-Link certifies to the FCC that the accused products only operate in channels 1-11.  This means TP-Link sells routers specifically configured to operate in the United States and the State of Texas.  The below is an example of the Attestation Letters that TP-Link has filed with the United States FCC.  In this case, TP-Link Hong Kong sought to sell the AX3000 Gigabit Wi-Fi 6 Router (an accused product in this action) in the United States and declared "that the device does not support channel 12 ~ 13 in 2.4GHz band and any non-US channels in all the operational mode(s) for the following product."



*TP-Link Corporation Limited FCC Attestation Letter (AX3000 Gigabit Wi-Fi 6 Router)*, TP-LINK HONG KONG SUBMISSION TO THE FCC (September 15, 2023) (emphasis added).

31.     Defendants utilize established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers and other users in the U.S., including providing links via their website to online stores, retailers, resellers, distributors, and solution partners offering such products and related services for sale.  Products have been sold in retail stores, both brick-and-mortar and online, within this District and in Texas, including well-known and widely used retailers, such as Amazon.com, Target, Office Depot, Office Max, Walmart, Sam's Club, BestBuy, Sears, QVC, Micro Center, Costco, and Lowe's.  For example, certain of the Accused Products are available for purchase at various retail stores in this District, including the Walmart Supercenter store locations in Marshall, Longview, and Tyler, Texas.



*TP-Link Products Search,* WALMART WEBSITE (last visited May 2025), *available at*: https://www.walmart.com/search?q=tp-link&facet=fulfillment_method_in_store%3AIn-store (showing 24 TP-Link models available in-store at the Marshall, Texas Walmart).

32.     This Court has personal jurisdiction over TP-Link, directly and/or through the activities of TP-Link intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers.  Through direction and control of these various entities, TP-Link

has committed acts of direct and/or indirect patent infringement within the State of Texas, within this judicial District, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with the State of Texas such that personal jurisdiction over TP-Link would not offend traditional notions of fair play and substantial justice.

33.     TP-Link, directly via its agents and distribution partners, retailers, reseller partners, and other service providers in the United States, has placed and continues to place infringing Accused Products into the U.S. stream of commerce.  TP-Link has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial District and the State of Texas.

34.     TP-Link utilizes established distribution channels to distribute, market, offer for sale, sell, and service infringing products directly to consumers and other users in the United States, including providing links via its website to online stores, retailers, resellers, and distributors offering such products and related services for sale.  *See* https://www.tp-link.com/us/wifi6/#shop-now (advertising products for sale, and identifying third-party retailers of Defendant TP-Link's Accused Products).

35.     On information and belief, the www.tp-link.com website ("TP-Link Website") is controlled by one or more of the TP-Link Defendants.  At minimum, the TP-Link Website is the product of the concerted actions and decisions of the TP-Link Defendants and the subsidiaries and related TP-Link entities affiliated with the TP-Link Defendants.

36.     There is a single TP-Link Website that serves all the various markets in which TP-Link products are marketed and sold.  *See* https://www.tp-link.com/.  In the United States, the default webpage within the TP-Link Website defaults to an English-language website targeted to

the U.S. market and includes a "TP-Link Systems Inc. and its affiliated companies" copyright notice on the page.  *See* https://www.tp-link.com/us/.  Within the same TP-Link Website, however, are dozens of other webpages that each target different markets.



*Choose Your Location*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/choose-your-location/.

37.    The webpages that correspond to the different geographies all link to different webpages within the same TP-Link Website, and each country (or geographic region)-specific webpage identifies one of a variety of TP-Link subsidiaries or related corporate entities.  For example, the "Argentina" link takes users to a Spanish-language webpage on the same TP-Link Website.   *See* https://www.tp-link.com/ar/.  This Argentina-specific webpage on the TP-Link Website identifies "TP-Link SRL" as the company on the copyright notice for that webpage.  The "Hong Kong, China" link takes users to a webpage with English and Chinese on the same TP-Link

Website.  *See* https://www.tp-link.com/hk/.  This Hong Kong-specific webpage on the TP-Link Website identifies "TP-Link Hong Kong & Macau" on the copyright notice for that webpage.  The "Germany" link takes users to a German-language webpage on the same TP-Link Website.  *See* https://www.tp-link.com/de/.  This Germany-specific webpage on the TP-Link Website identifies "TP-Link Deutschland GmbH" on the copyright notice for that webpage.

38.    All of these country (or geographic region)-specific webpages on the TP-Link Website all have the same color-scheme, "TP-Link" logos and trademarks, the same branding (*i.e.*, Tapo, Omada, TP-Link, Archer Routers, etc.), and the same overall marketing messaging surrounding the same product lines.  As an example, a listing for the TP-Link AX3000 router, which is an accused product at issue in this case, from each of the Argentina, United States, Hong Kong, and Germany-specific webpages on the TP-Link Website are shown below:



*TP Link Archer AX55 Product Page*, TP LINK ARGENTINA WEBSITE, *available at:* https://www.tp-link.com/ar/home-networking/wifi-router/archer-ax55/ (last visited June 2025) (Archer AX55 listing on the Argentina webpage of the TP-Link Website).



*TP Link Archer AX55 Product Page*, TP LINK UNITED STATES WEBSITE, *available at:* https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (Archer AX3000 listing on the United States webpage of the TP-Link Website).



*TP Link Archer AX55 Product Page*, TP LINK HONG KONG WEBSITE, *available at:* https://www.tp-link.com/hk/home-networking/wifi-router/archer-ax55/ (Archer AX3000 listing on the Hong Kong webpage of the TP-Link Website).

*TP Link Archer AX55 Product Page*, TP LINK GERMANY WEBSITE, *available at:* https://www.tp-link.com/de/home-networking/wifi-router/archer-ax55-pro/ (Archer AX3000 listing on the Germany webpage of the TP-Link Website).

39.    Each of the above listings are displayed on different country-specific webpages on the TP-Link Website, and each respective country-specific webpage identifies a different TP-Link subsidiary or related corporate entity.  However, as the above representative listings shown above highlight, the marketing material, imagery, logos, product naming, and product selection are common across the various geographic regions.  On information and belief, one or more of the TP-Link Defendants and/or their corporate subsidiaries, related entities, and agents acting at the TP-Link Defendants' direction and control design common products to be sold in the various geographic regions in which TP-Link does business, including the United States, and the State of Texas specifically, manufactures those TP-Link products, and determines how the products will be marketed and sold into the various regions in which TP-Link does business, including the United States.

40.    TP-Link has shrouded much of the registrar and ownership information showing which corporate entity owns and controls the TP-Link Website from public view.  *See*

COMPLAINT FOR PATENT INFRINGEMENT

https://lookup.icann.org/en/lookup (showing that the Contact Name and Organization, Administrative Name and Organization, and Technical Name and Organization records for the www.tp-link.com domain have all been redacted from the Internet Corporation for Assigned Names and Numbers (ICANN) publicly-searchable records). However, on information and belief, one or more of the TP-Link Defendants own and/or control the content of the TP-Link Website. The limited information publicly available about the TP-Link Website shows that the Country Code associated with each of the TP-Link Website's Registrant, Administrative Contact, and Technical Contact is Singapore. *Id.*

41.    TP-Link products have been sold in both retail stores (online and brick and mortar) within this judicial District and within the State of Texas. For example, the Accused Product TP-Link Archer AXE5400 Wi-Fi 6E Router is available for purchase at the Marshall Walmart Supercenter located in this District.



*TP-Link AXE5400,* WALMART WEBSITE (last visited May 2025), *available at*: https://www.walmart.com/ip/TP-Link-Tri-Band-6-Stream-Wi-Fi-6E-Router-6-Ghz-Band-Speed-up-to-5-4-Gbps-Archer-AXE5400/

42.    Based on TP-Link's connections and relationships with these retailers and digital distribution platforms, TP-Link knows that Texas is a termination point of its established distribution channels, including the online as well as physical stores offering TP-Link products to users in Texas.  TP-Link, therefore, has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought before this Court.

43.    TP-Link's suppliers and distributors import, advertise, offer for sale, and sell TP-Link Accused Products via their own websites to U.S. consumers, including to consumers in the State of Texas.  Based on TP-Link's connections and relationships, including supply contracts and other agreements with the United States- and Texas-based distributors and suppliers, such as at least Costco, Walmart, and Amazon, TP-Link knows and has known that the State of Texas is a termination point of the established distribution channels for infringing TP-Link Accused Products.  TP-Link has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought into this Court, at least on this basis.

44.    Based on TP-Link's connections and relationships with these retailers and digital distribution platforms, TP-Link knows that Texas is a termination point of its established distribution channels, including the online as well as physical stores offering TP-Link products to users in Texas.  TP-Link, therefore, has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought before this Court.

45.    In the alternative, this Court has personal jurisdiction over TP-Link under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, TP-Link is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over TP-Link is consistent with the United States Constitution.

46.     Because this Court has personal jurisdiction over TP-Link—foreign corporations—venue is proper pursuant to 28 U.S.C. § 1391(c)(3) and 28 U.S.C. § 1400(b).

## THE 802.11AX (WI-FI 6) STANDARD

47.     Wireless Local Area Networks (WLANs) have become a foundational technology in modern digital communications.  This is largely driven by the increasing ubiquity of mobile computing devices, streaming services, and cloud-based applications.  WLANs operate over unlicensed spectrum bands, primarily in the 2.4 GHz and 5 GHz bands.  More recently, the 6 GHz band has been made available for Wi-Fi use in certain regions of the world.

48.     To ensure that users are able to communicate with one another despite the use of different networking equipment and end-user devices manufactured by different companies, it is important that WLAN operation is standardized.  This ensures interoperability, reliability, and global adoption of Wi-Fi technologies.  In the field of WLAN operation, standardization is organized through the Institute of Electrical and Electronics Engineers (IEEE), and more specifically under the 802.11 family of specifications, which is titled, "*Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications.*"

49.     The original IEEE 802.11 standard was published in 1997 and specified data rates of 1Mbps and 2Mbps using the 2.4 GHz band and three PHY layer technologies: infrared, frequency-hopping spread spectrum (FHSS), and direct-sequence spread spectrum (DSSS).  However, because of this relatively low data throughput, adoption was limited.  Over the years, the 802.11 standard has been amended and enhanced with the contribution of additional technologies by leading companies that operate in the WLAN field.

50.     In 1999, 802.11b and 802.11a were published that increased maximum throughput to 11Mbps in the 2.4 GHz band and 54 Mbps in the 5 GHz band, respectively.  In 2003, 802.11g

was published that combined the higher (54 Mbps) throughput rate of 802.11a with the backward compatibility in the 2.4 GHz band.  This led to widespread adoption of Wi-Fi as a ubiquitous technology.

51.    In 2009, 802.11n was released with High Throughput (HT) enhancements.  802.11n introduced multiple-input, multiple-output (MIMO) antenna systems, channel bonding, frame aggregation, and several PHY/MAC enhancements to support data throughput rates up to 600 Mbps, introducing a significant leap in the technical capabilities of Wi-Fi systems.

52.    In 2013, IEEE introduced 802.11ac, which introduced Very High Throughput (VHT) features in the 5 GHz band.  This amendment to the 802.11 standard expanded MIMO capabilities to support up to 8 spatial streams and supported multi-user MIMO in the downlink.  These advancements improved network performance yet again in both home/personal as well as enterprise Wi-Fi networks.

53.    Despite these improvements over the years, challenges remained.  Due to the increasing prevalence of Wi-Fi-connected devices in daily life, legacy Wi-Fi technologies suffered from significant performance degradation as more devices competed for access to a given wireless network.

54.    To address the growing demands for higher capacity and more predictable performance in dense deployment scenarios, the IEEE formed Task Group AX in 2014.  The group's mission was to develop a High Efficiency (HE) WLAN standard to improve throughput-per-area and reduce contention overhead.

55.    The standard resulting from this work is the 802.11ax Standard, which is commonly known as the Wi-Fi 6 standard.  The 802.11ax Standard represented a major architectural upgrade to Wi-Fi networks.  Key innovations in the 802.11ax Standard include Orthogonal Frequency

Division Multiple Access (OFDMA) (allowing simultaneous transmissions to multiple users by subdividing channels); uplink and downlink multiple-user, multiple input, multiple output (MU-MIMO); Beamforming (a key innovation that improves signal strength and spatial efficiency by directing wireless transmissions toward specific devices rather than broadcasting in all directions); and improved MAC layer efficiency.  The first draft of the 802.11ax Standard was published in March 2016.  The Standard then underwent multiple revisions and industry trials before final approval by the IEEE on February 9, 2021 as IEEE Std 802.11ax-2021.

56.    Several leading wireless communication technology companies contributed technologies to the 802.11ax Standard.  Among the companies to substantially contribute to the 802.11ax Standard are: Marvell Technology, Inc.; NXP Semiconductors N.V.; and ZTE Corporation.  Velocity owns a portfolio of patents developed by these companies and reflecting their substantial contributions to the groundbreaking leap forward in WLAN technology reflected in the 802.11ax Standard now widely adopted by industry.

**TP-LINK'S KNOWLEDGE OF THE PATENTS-IN-SUIT**

57.    TP-Link has known that NXP possessed patents relating to the 802.11ax Standard since at least September 29, 2020, which is when NXP submitted a Letter of Assurance for essential patent claims ("LOA") to the IEEE indicating that NXP owns patents that may be essential to the implementation of 802.11ax.  Further, TP-Link has known that ZTE was the developer of patented technology relating to the 802.11ax Standard at least since March 4, 2024, which is when ZTE submitted a LOA to the IEEE indicating that it owned patents that may be essential to the implementation of the 802.11ax Standard.

58.    TP-Link has also known that Velocity was the owner of the patents-in-suit since at least April 15, 2025 when counsel for Velocity sent TP-Link a letter, attached hereto as Exhibit

23. In that April 15 letter, Velocity explained that its patent portfolio covers technologies "incorporated into the IEEE 802.11ax (*i.e.*, Wi-Fi 6) standard, including: Uplink Multi-User Multiple-Input Multiple-Output (UL MU-MIMO); Basic Service Set (BSS) Coloring; Target Wake Time (TWT); Orthogonal Frequency Division Multiple Access (OFDMA); Longer OFDM Symbol Duration; Beamforming; and Transmit Power Control (TPC)." Velocity further explained that its patents "also cover[] technologies included in the mandatory sections of the Wi-Fi 6E extension of the 802.11ax standard" and invited TP-Link to license the patents-in-suit. *Id.*

59.    In addition, and at minimum, TP-Link was aware of and has been aware of the patents-in-suit as of the date of filing of this Complaint.

## THE ASSERTED PATENTS

### U.S. PATENT NO. 8,675,570

60.    U.S. Patent No. 8,675,570 (the "'570 patent") entitled, *Scalable OFDM and OFDMA Bandwidth Allocation in Communication Systems*, was filed on March 24, 2008. The '570 patent claims priority to U.S. Provisional Patent Application No. 60/896,859, which was filed on March 23, 2007. The '570 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,031 days. A true and correct copy of the '570 patent is attached hereto as Exhibit 1.

61.    The '570 patent has been in full force and effect since its issuance. Velocity owns by assignment the entire right, title, and interest in and to the '570 patent.

62.    The '570 patent family has been cited by 90 United States and international patents and patent applications as relevant prior art. The following companies and research institutions have cited the '570 patent as relevant prior art:

- Qualcomm Incorporated
- Samsung Electronics Co., Ltd.
- Intel IP Corporation
- Apple Inc.

- Microsoft Technology Licensing, LLC
- LG Electronics Inc.
- Nokia Solutions and Networks Oy
- NEC Corporation
- Telefonaktiebolaget LM Ericsson
- Motorola Mobility LLC
- Interdigital CE Patent Holdings
- NXP BV
- Wi-Lan, Inc.
- Huawei Technologies Co., Ltd.
- Mediatek Inc.
- Panasonic Holdings
- Sharp Kabushiki Kaisha
- Fujitsu Mobile Communications Limited
- Futurewei Technologies, Inc.
- Electronics and Telecommunications Research Institute

## U.S. PATENT NO. 8,260,213

63.    U.S. Patent No. 8,260,213 (the "'213 patent") entitled, *Method and Apparatus to Adjust a Tunable Reactive Element*, was filed on September 15, 2009.  The '213 patent claims priority to U.S. Provisional Patent Application No. 61/192,091, which was filed on September 15, 2008.  The '213 patent is subject to a 35 U.S.C. § 154(b) term extension of 414 days.  A true and correct copy of the '213 patent is attached hereto as Exhibit 2.

64.    The '213 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '213 patent.

65.    The '213 patent family has been cited by several United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to STMicroelectronics NV, Raytheon Company, and BlackBerry Ltd. have cited the '213 patent family as relevant prior art.

## U.S. PATENT NO. 8,238,832

66.    U.S. Patent No. 8,238,832 (the "'832 patent") entitled, *Antenna Optimum Beam Forming for Multiple Protocol Coexistence on a Wireless Device*, was filed on August 27, 2008.

The '832 patent claims priority to Provisional Application No. 60/968,467, which was filed on August 28, 2007.  The '832 patent is subject to a 35 U.S.C. § 154(b) term extension of 661 days. A true and correct copy of the '832 patent is attached hereto as Exhibit 3.

67.    The '832 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '832 patent.

68.    The '832 patent family has been cited by 18 United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to the following companies and research institutions have cited the '832 patent family as relevant prior art:

- Intel Corporation
- Sprint Communications L.P.
- Hewlett Packard Enterprise Development LP
- Kabushiki Kaisha Toshiba
- Panasonic Avionics Corporation
- Siemens Aktiengesellschaft
- Texas Instruments Incorporated
- Qualcomm Incorporated
- Apple Inc.

## U.S. PATENT NO. 8,270,343

69.    U.S. Patent No. 8,270,343 (the "'343 patent") entitled, *Broadcasting of Textual and Multimedia Information*, was filed as U.S. Patent Application No. 11/722,295 on June 20, 2007. The '343 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP04/14906, which was filed on December 20, 2004.  The '343 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,486 days.  A true and correct copy of the '343 patent is attached hereto as Exhibit 4.

70.    The '343 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '343 patent.

71.     The '343 patent family has been cited by at least 27 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '343 patent family as relevant prior art:

- Telefonaktiebolaget LM Ericsson
- Samsung Electronics Co., Ltd.
- Huawei Technologies Co., Ltd.
- Cisco Technology, Inc.
- Qualcomm Incorporated

**U.S. PATENT NO. 8,213,870**

72.     U.S. Patent No. 8,213,870 (the "'870 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on October 15, 2008.  The '870 patent claims priority to U.S. Provisional patent Application No. 60/980,036, which was filed on October 15, 2007.  A true and correct copy of the '870 patent is attached hereto as Exhibit 5.

73.     The '870 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '870 patent.

74.     The '870 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '870 patent family as relevant prior art:

- Electronics and Telecommunications Research Institute
- NEC Laboratories America, Inc.
- Qualcomm Incorporated
- Samsung Electronics Co., Ltd.
- Intel Corporation
- Ruckus Wireless, Inc.
- Newracom, Inc.
- Telefonaktiebolaget LM Ericsson
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Amazon Technologies, Inc.

**U.S. PATENT NO. 8,644,765**

75.      U.S. Patent No. 8,644,765 (the "'765 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on June 29, 2012.  The '765 patent is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870, and also claims priority to U.S. Provisional Application No. 60/980,036, which was filed October 15, 2007.  A true and correct copy of the '765 patent is attached hereto as Exhibit 6.

76.      The '765 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '765 patent.

77.      The '765 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to the following companies and research institutions have cited the '765 patent family as relevant prior art:

- Amazon Technologies, Inc.
- Samsung Electronics Co., Ltd.
- Qualcomm Incorporated
- Intel Corporation
- Arris Enterprises LLC
- Panasonic Avionics Corporation
- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Newracom, Inc.

**U.S. PATENT NO. 9,083,401**

78.      U.S. Patent No. 9,083,401 (the "'401 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on February 3, 2014.  The '401 patent is a continuation of U.S. Patent Application No. 13/539,131, which was filed on June 29, 2012 and issued as U.S. Patent No. 8,644,765, which is a continuation of U.S. Patent Application No.

12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870.  The '401 patent also claims priority to U.S. Provisional Application No. 60/980,036, which was filed on October 15, 2007.  A true and correct copy of the '401 patent is attached hereto as Exhibit 7.

79.    The '401 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '401 patent.

80.    The '401 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to the following companies and research institutions have cited the '401 patent family as relevant prior art:

- Amazon Technologies, Inc.
- Samsung Electronics Co., Ltd.
- Qualcomm Incorporated
- Intel Corporation
- Arris Enterprises LLC
- Panasonic Avionics Corporation
- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Newracom, Inc.

**U.S. PATENT NO. 10,200,096**

81.    U.S. Patent No. 10,200,096 (the "'096 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on March 13, 2017.   The '096 patent is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870, and also claims priority to U.S. Provisional Patent Application No. 60/980,036, which was filed on October 15, 2007.  The '096 patent is subject to a 35 U.S.C. § 154(b) term extension of 11 days.  A true and correct copy of the '096 patent is attached hereto as Exhibit 8.

82.    The '096 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '096 patent.

83.    The '096 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '096 patent family as relevant prior art:

- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Qualcomm Incorporated
- Intel Corporation
- Ruckus Wireless, Inc.
- Newracom, Inc.
- Telefonaktiebolaget LM Ericsson
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Amazon Technologies, Inc.

**U.S. PATENT NO. 8,238,859**

84.    U.S. Patent No. 8,238,859 (the "'859 patent") entitled, *Radio Receiver*, was filed as U.S. Patent Application No. 12/281,987 on September 6, 2008.  The '859 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP07/50774, which was filed on March 8, 2007.  The '859 patent claims priority to European Patent Application No. EP06110905, filed on March 9, 2006.  The '859 patent is subject to a 35 U.S.C. § 154(b) term extension of 834 days.  A true and correct copy of the '859 patent is attached hereto as Exhibit 9.

85.     The '859 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '859 patent.

86.    The '859 patent family has been cited by several United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to Trend Micro

Co., Ltd. and Microchip Technology Incorporated have cited the '859 patent family as relevant prior art.

**U.S. PATENT NO. 8,265,573**

87.    U.S. Patent No. 8,265,573 (the "'573 patent") entitled, *Wireless Subscriber Communication Unit and Method of Power Control with Back-Off Therefore*, was filed as U.S. Patent Application No. 12/096,550 on June 6, 2008.  The '573 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP05/56593, which was filed on December 7, 2005.  The '573 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,117 days.  A true and correct copy of the '573 patent is attached hereto as Exhibit 10.

88.    The '573 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '573 patent.

89.    The '573 patent family has been cited by several United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '573 patent family as relevant prior art:

- Panasonic Holdings Corporation
- ViaSat, Inc.
- Rockwell Collins, Inc.
- Chi Mei Communication Systems, Inc.
- Nordic Semiconductor ASA

**U.S. PATENT NO. 9,596,648**

90.    U.S. Patent No. 9,596,648 (the "'648 patent") entitled, *Unified Beacon Format*, was filed on June 28, 2013.  The '648 patent claims priority to U.S. Provisional Patent Application Nos. 61/666,156; 61/680,628; and 61/700,148, which were filed on June 29, 2012; August 7, 2012; and September 12, 2012, respectively.   A true and correct copy of the '648 patent is attached hereto as Exhibit 11.

91.     The '648 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '648 patent.

92.     The '648 patent family has been cited by 24 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '648 patent family as relevant prior art:

- Huawei Technologies Co., Ltd.
- Intel Corporation
- Qualcomm Incorporated
- Texas Instruments Incorporated
- Mediatek Inc.
- ZTE Corporation
- Singapore Agency for Science, Technology, and Research
- International Business Machines Corporation
- Ericsson Sweden Ltd.
- The Wireless Registry, Inc.
- Sling Media, LLC

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,675,570

93.     Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

94.     TP-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH;

Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'570 Accused Product(s)").

95.     TP-Link designs, makes, uses, sells, and/or offers for sale the '570 Accused Products in the United States.

96.     One or more TP-Link subsidiaries and/or affiliates use the '570 Accused Products in regular business operations.

97.     TP-Link has directly infringed and continues to directly infringe the '570 patent by, among other things, making, using, offering for sale, and/or selling the '570 Accused Products. The functionality recited in the '570 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '570 Accused Products infringe at least claim 1 of the '570 patent can be found in the chart attached hereto as Exhibit 12.

98.    The '570 Accused Products are available to businesses and individuals throughout the United States.

99.    The '570 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

100.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '570 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '570 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 12 applies each limitation of claim 1 of the '570 patent to the '570 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '570 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '570 patent.  Exhibit 12 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 12 that is mapped to the '570 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

101.    TP-Link also indirectly infringes the '570 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '570 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

102.    TP-Link has had knowledge of the '570 patent since at least shortly after March 4, 2024, when ZTE submitted a Letter of Assurance to IEEE notifying IEEE and industry participants

that ZTE developed patented technologies incorporated into the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '570 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

103.    Alternatively, TP-Link has had knowledge of the '570 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '570 patent and knew of its infringement, including by way of this lawsuit.

104.    TP-Link intended to induce patent infringement by third-party customers and users of the '570 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '570 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '570 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '570 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '570 patent, including at least claim 1, and TP-Link further advertises the '570 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '570 patent.  On information and belief, TP-Link advertises all of the '570 Accused Products as complying with the 802.11ax Standard.[2]  By providing instruction and

---

[2] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-

training to customers and end-users on how to use the '570 Accused Products in a manner that directly infringes one or more claims of the '570 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '570 patent. TP-Link engaged in such inducement to promote the sales of the '570 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '570 patent. Accordingly, TP-Link has induced and continues to induce users of the '570 Accused Products to use the '570 Accused Products in their ordinary and customary way to infringe the '570 patent, knowing that such use constitutes infringement of the '570 patent.

105. TP-Link also indirectly infringes the '570 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '570 Accused Products and causing the '570 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '570 Accused Products, such that the '570 patent is directly infringed. The accused components within the '570 Accused Products are material to the invention of the '570 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '570 patent. TP-Link has performed and continues to perform these affirmative acts with knowledge of the '570 patent and with intent, or willful blindness, that they cause the direct infringement of the '570 patent.

---

link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

106.    As described above, TP-Link knew that ZTE was the company responsible for developing technologies incorporated into the 802.11ax Standard and that ZTE patented those pioneering technologies since at least March 4, 2024, when ZTE submitted a Letter of Assurance to IEEE.   The '570 patent is a patent originally assigned to ZTE that resulted from ZTE's development of OFDMA technology incorporated into the 802.11ax Standard.  TP-Link has also known that Velocity was the owner by assignment of the '570 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

107.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

108.    TP-Link is utilizing the technology claimed in the '570 patent without paying a reasonable royalty.  TP-Link is infringing the '570 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

109.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '570 patent.

110.    As a result of TP-Link's infringement of the '570 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's

infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 8,260,213

111. Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

112. TP-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76;

PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'213 Accused Product(s)").

113.    TP-Link designs, makes, uses, sells, and/or offers for sale the '213 Accused Products in the United States.

114.    One or more TP-Link subsidiaries and/or affiliates use the '213 Accused Products in regular business operations.

115.    TP-Link has directly infringed and continues to directly infringe the '213 patent by, among other things, making, using, offering for sale, and/or selling the '213 Accused Products. The functionality recited in the '213 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '213 Accused Products infringe at least claim 1 of the '213 patent can be found in the chart attached hereto as Exhibit 13.

116.    The '213 Accused Products are available to businesses and individuals throughout the United States.

117.    The '213 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

118.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '213 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '213 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 13 applies each limitation of claim 1 of the '213 patent to the '213 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '213 Accused Products obtained through discovery.   This chart is not intended to limit

Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '213 patent.  Exhibit 13 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 13 that is mapped to the '213 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

119.    TP-Link also indirectly infringes the '213 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '213 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

120.    TP-Link has had knowledge of the '213 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '213 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

121.    Alternatively, TP-Link has had knowledge of the '213 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '213 patent and knew of its infringement, including by way of this lawsuit.

122.    TP-Link intended to induce patent infringement by third-party customers and users of the '213 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the accused products

would infringe the '213 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '213 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '213 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '213 patent, including at least claim 1, and TP-Link further advertises the '213 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '213 patent.  On information and belief, TP-Link advertises all of the '213 Accused Products as complying with the 802.11ax Standard.[3]  By providing instruction and training to customers and end-users on how to use the '213 Accused Products in a manner that directly infringes one or more claims of the '213 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '213 patent.  TP-Link engaged in such inducement to promote the sales of the '213 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '213 patent.  Accordingly, TP-Link has induced and continues to induce users of the '213 Accused Products to use the '213 Accused Products in their ordinary and customary way to infringe the '213 patent, knowing that such use constitutes infringement of the '213 patent.

123.    TP-Link also indirectly infringes the '213 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this

---

[3] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '213 Accused Products and causing the '213 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '213 Accused Products, such that the '213 patent is directly infringed.  The accused components within the '213 Accused Products are material to the invention of the '213 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '213 patent.  TP-Link has performed and continues to perform these affirmative acts with knowledge of the '213 patent and with intent, or willful blindness, that they cause the direct infringement of the '213 patent.

124.    As described above, TP-Link knew that NXP possessed patents, including the '213 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '213 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

125.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

126.    TP-Link is utilizing the technology claimed in the '213 patent without paying a reasonable royalty.  TP-Link is thus infringing the '213 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

127.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '213 patent.

128.    As a result of TP-Link's infringement of the '213 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## COUNT III
### INFRINGEMENT OF U.S. PATENT NO. 8,238,832

129.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

130.    TP-Link makes, sells, offers to sell, imports, and/or uses all Access Points[4] ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not

---

[4] An IEEE 802.11ax Access Point (AP) (802.11ax § 3.2) is defined by the 802.11ax Standard as a High Efficiency (HE) station (STA) (§ 4.3.15a) that establishes and centrally coordinates Basic Service Set (BSS) infrastructure (§§ 3.2, 26.17.1). Mandatory Physical Layer (PHY) capabilities of an 802.11ax Access Point include Downlink/Uplink Orthogonal Frequency Division Multiple Access (OFDMA) and Downlink Multi-User Multiple Input, Multiple Output (DL MU-MIMO) for APs supporting 4 or more spatial streams over the entire PPDU bandwidth.  Such APs shall also set the MU Beamformer subfield to 1 (§§ 4.3.15a, 27.1.1, 26.7.2).  When operating in the 6 GHz band, APs shall support at least 80 MHz channel width, enable spectrum management (dot11SpectrumManagementRequired = true), and enable FILS Discovery frame omission (dot11FILSOmitReplicateProbeResponses = true) (§ 26.17.2.1). Mandatory Medium Access Control (MAC) capabilities of an 802.11ax Access Point include HE control field operations (dot11HEControlFieldOptionImplemented = true) (§ 10.8), OMI responder (dot11OMIOptionImplemented = true) (§§ 4.3.15a, 26.9.1), and individual TWT responder functionality (§§ 4.3.15a, 26.8.1).

limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'832 Accused Product(s)").

131.    TP-Link designs, makes, uses, sells, and/or offers for sale the '832 Accused Products in the United States.

132.    One or more TP-Link subsidiaries and/or affiliates use the '832 Accused Products in regular business operations.

133.    TP-Link has directly infringed and continues to directly infringe the '832 patent by, among other things, making, using, offering for sale, and/or selling the '832 Accused Products. The functionality recited in the '832 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '832 Accused Products infringe at least claim 18 of the '832 patent can be found in the chart attached hereto as Exhibit 14.

134.    The '832 Accused Products are available to businesses and individuals throughout the United States.

135.    The '832 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

136.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '832 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '832 patent, including at least claim 18 pursuant to 35 U.S.C. § 271(a).  Exhibit 14 applies each limitation of claim 18 of the '832 patent to the '832 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '832 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '832 patent.  Exhibit 14 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 14 that is mapped to the '832 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

137.    TP-Link also indirectly infringes the '832 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize

the '832 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

138.    TP-Link has had knowledge of the '832 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '832 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

139.    Alternatively, TP-Link has had knowledge of the '832 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '832 patent and knew of its infringement, including by way of this lawsuit.

140.    TP-Link intended to induce patent infringement by third-party customers and users of the '832 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '832 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '832 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '832 Accused Products that have the capability of operating in a manner that infringes one or more of the claims of the '832 patent, including at least claim 18, and TP-Link further advertises the '832 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '832 patent.  On information and belief, TP-Link advertises all of the

'832 Accused Products as complying with the 802.11ax Standard.[5]  By providing instruction and training to customers and end-users on how to use the '832 Accused Products in a manner that directly infringes one or more claims of the '832 patent, including at least claim 18, TP-Link specifically intended to induce infringement of the '832 patent.  TP-Link engaged in such inducement to promote the sales of the '832 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '832 Accused Products to infringe the '832 patent.  Accordingly, TP-Link has induced and continues to induce users of the '832 Accused Products to use the '832 Accused Products in their ordinary and customary way to infringe the '832 patent, knowing that such use constitutes infringement of the '832 patent.

141.    TP-Link also indirectly infringes the '832 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '832 Accused Products and causing the '832 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '832 Accused Products, such that the '832 patent is directly infringed.  The accused components within the '832 Accused Products are material to the invention of the '832 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the

---

[5] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

'832 patent.  TP-Link has performed and continues to perform these affirmative acts with knowledge of the '832 patent and with intent, or willful blindness, that they cause the direct infringement of the '832 patent.

142.    As described above, TP-Link knew that NXP possessed patents, including the '832 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '832 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

143.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

144.    TP-Link is utilizing the technology claimed in the '832 patent without paying a reasonable royalty.  TP-Link is thus infringing the '832 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

145.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '832 patent.

146.    As a result of TP-Link's infringement of the '832 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's

infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 8,270,343

147.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

148.    TP-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76;

PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'343 Accused Product(s)").

149.     TP-Link designs, makes, uses, sells, and/or offers for sale the '343 Accused Products in the United States.

150.     One or more TP-Link subsidiaries and/or affiliates use the '343 Accused Products in regular business operations.

151.     TP-Link has directly infringed and continues to directly infringe the '343 patent by, among other things, making, using, offering for sale, and/or selling the '343 Accused Products. The functionality recited in the '343 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '343 Accused Products infringe at least claim 10 of the '343 patent can be found in the chart attached hereto as Exhibit 15.

152.     The '343 Accused Products are available to businesses and individuals throughout the United States.

153.     The '343 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

154.     By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '343 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '343 patent, including at least claim 10 pursuant to 35 U.S.C. § 271(a).  Exhibit 15 applies each limitation of claim 10 of the '343 patent to the '343 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '343 Products obtained through discovery.  This chart is not intended to limit Velocity's

right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '343 patent.  Exhibit 15 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 15 that is mapped to the '343 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

155.    TP-Link also indirectly infringes the '343 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '343 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

156.    TP-Link has had knowledge of the '343 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '343 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

157.    Alternatively, TP-Link has had knowledge of the '343 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '343 patent and knew of its infringement, including by way of this lawsuit.

158.    TP-Link intended to induce patent infringement by third-party customers and users of the '343 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the '343 Accused

Products would infringe the '343 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '343 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '343 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '343 patent, including at least claim 10, and TP-Link further advertises the '343 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '343 patent.  On information and belief, TP-Link advertises all of the '343 Accused Products as complying with the 802.11ax Standard.[6]  By providing instruction and training to customers and end-users on how to use the '343 Accused Products in a manner that directly infringes one or more claims of the '343 patent, including at least claim 10, TP-Link specifically intended to induce infringement of the '343 patent.  TP-Link engaged in such inducement to promote the sales of the '343 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '343 Accused Products to infringe the '343 patent.  Accordingly, TP-Link has induced and continues to induce users of the '343 Accused Products to use the '343 Accused Products in their ordinary and customary way to infringe the '343 patent, knowing that such use constitutes infringement of the '343 patent.

159.    TP-Link also indirectly infringes the '343 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this

---

[6] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '343 Accused Products and causing the '343 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '343 Accused Products, such that the '343 patent is directly infringed.  The accused components within the '343 Accused Products are material to the invention of the '343 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '343 patent.  TP-Link has performed and continues to perform these affirmative acts with knowledge of the '343 patent and with intent, or willful blindness, that they cause the direct infringement of the '343 patent.

160.    As described above, TP-Link knew that NXP possessed patents, including the '343 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '343 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

161.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

162.    TP-Link is thus infringing the '343 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

163.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '343 patent.

164.    As a result of TP-Link's infringement of the '343 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 8,213,870

165.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

166.    TP-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400;

AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'870 Accused Product(s)").

167.    TP-Link designs, makes, uses, sells, and/or offers for sale the '870 Accused Products in the United States.

168.    One or more TP-Link subsidiaries and/or affiliates use the '870 Accused Products in regular business operations.

169.    TP-Link has directly infringed and continues to directly infringe the '870 patent by, among other things, making, using, offering for sale, and/or selling the '870 Accused Products. The functionality recited in the '870 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '870 Accused Products infringe at least claim 1 of the '870 patent can be found in the chart attached hereto as Exhibit 16.

170.    The '870 Accused Products are available to businesses and individuals throughout the United States.

171.    The '870 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

172.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '870 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '870 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 16 applies each limitation of claim 1 of the '870 patent to the '870 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '870 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '870 patent.  Exhibit 16 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 16 that is mapped to the '870 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

173.    TP-Link also indirectly infringes the '870 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '870 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

174.    TP-Link has had knowledge of the '870 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '870 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

175.    Alternatively, TP-Link has had knowledge of the '870 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '870 patent and knew of its infringement, including by way of this lawsuit.

176.    TP-Link intended to induce patent infringement by third-party customers and users of the '870 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '870 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '870 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '870 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '870 patent, including at least claim 1, and TP-Link further advertises the '870 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '870 patent.  On information and belief, TP-Link advertises all of the '870 Accused Products as complying with the 802.11ax Standard.[7]  By providing instruction and training to customers and end-users on how to use the '870 Accused Products in a manner that directly infringes one or more claims of the '870 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '870 patent.  TP-Link engaged in such inducement to promote the sales of the '870 Accused Products, e.g., through TP-Link user

---

[7] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

manuals, product support, marketing materials, and training materials, to actively induce the users of the accused products to infringe the '870 patent. Accordingly, TP-Link has induced and continues to induce users of the '870 Accused Products to use the '870 Accused Products in their ordinary and customary way to infringe the '870 patent, knowing that such use constitutes infringement of the '870 patent.

177.    TP-Link also indirectly infringes the '870 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '870 Accused Products and causing the '870 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '870 Accused Products, such that the '870 patent is directly infringed. The accused components within the '870 Accused Products are material to the invention of the '870 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '870 patent. TP-Link has performed and continues to perform these affirmative acts with knowledge of the '870 patent and with intent, or willful blindness, that they cause the direct infringement of the '870 patent.

178.    As described above, TP-Link knew that NXP possessed patents, including the '870 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '870 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

179.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

180.    TP-Link is utilizing the technology claimed in the '870 patent without paying a reasonable royalty.  TP-Link is thus infringing the '870 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

181.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '870 patent.

182.    As a result of TP-Link's infringement of the '870 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 8,644,765

183.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

184.    TP-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer

AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'765 Accused Product(s)").

185.    TP-Link designs, makes, uses, sells, and/or offers for sale the '765 Accused Products in the United States.

186.    One or more TP-Link subsidiaries and/or affiliates use the '765 Accused Products in regular business operations.

187.    TP-Link has directly infringed and continues to directly infringe the '765 patent by, among other things, making, using, offering for sale, and/or selling the '765 Accused Products.

The functionality recited in the '765 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '765 Accused Products infringe at least claim 1 of the '765 patent can be found in the chart attached hereto as Exhibit 17.

188.    The '765 Accused Products are available to businesses and individuals throughout the United States.

189.    The '765 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

190.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '765 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '765 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 17 applies each limitation of claim 1 of the '765 patent to the '765 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '765 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '765 patent.  Exhibit 17 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 17 that is mapped to the '765 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

191.    TP-Link also indirectly infringes the '765 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '765 Accused Products to send and receive modulated digital data via radio waves in

compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

192.    TP-Link has had knowledge of the '765 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '765 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

193.    Alternatively, TP-Link has had knowledge of the '765 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '765 patent and knew of its infringement, including by way of this lawsuit.

194.    TP-Link intended to induce patent infringement by third-party customers and users of the '765 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the '765 Accused Products would infringe the '765 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '765 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '765 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '765 patent, including at least claim 1, and TP-Link further advertises the '765 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '765 patent.  On information and belief, TP-Link

advertises all of the '765 Accused Products as complying with the 802.11ax Standard.[8]  By providing instruction and training to customers and end-users on how to use the '765 Accused Products in a manner that directly infringes one or more claims of the '765 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '765 patent.  TP-Link engaged in such inducement to promote the sales of the '765 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '765 Accused Products to infringe the '765 patent.  Accordingly, TP-Link has induced and continues to induce users of the '765 Accused Products to use the '765 Accused Products in their ordinary and customary way to infringe the '765 patent, knowing that such use constitutes infringement of the '765 patent.

195.    TP-Link also indirectly infringes the '765 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '765 Accused Products and causing the '765 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '765 Accused Products, such that the '765 patent is directly infringed.  The accused components within the '765 Accused Products are material to the invention of the '765 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the

---

[8] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

'765 patent.   TP-Link has performed and continues to perform these affirmative acts with knowledge of the '765 patent and with intent, or willful blindness, that they cause the direct infringement of the '765 patent.

196.    As described above, TP-Link knew that NXP possessed patents, including the '765 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '765 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

197.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.   At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.   TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

198.    TP-Link is utilizing the technology claimed in the '765 patent without paying a reasonable royalty.   TP-Link is thus infringing the '765 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

199.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '765 patent.

200.    As a result of TP-Link's infringement of the '765 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's

infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

**COUNT VII**
**INFRINGEMENT OF U.S. PATENT NO. 9,083,401**

201.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

202.    TP-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76;

COMPLAINT FOR PATENT INFRINGEMENT

Page 66 of 94

PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'401 Accused Product(s)").

203.    TP-Link designs, makes, uses, sells, and/or offers for sale the '401 Accused Products in the United States.

204.    One or more TP-Link subsidiaries and/or affiliates use the '401 Accused Products in regular business operations.

205.    TP-Link has directly infringed and continues to directly infringe the '401 patent by, among other things, making, using, offering for sale, and/or selling the '401 Accused Products. The functionality recited in the '401 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '401 Accused Products infringe at least claim 1 of the '401 patent can be found in the chart attached hereto as Exhibit 18.

206.    The '401 Accused Products are available to businesses and individuals throughout the United States.

207.    The '401 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

208.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '401 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '401 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 18 applies each limitation of claim 1 of the '401 patent to the '401 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '401 Accused Products obtained through discovery.  This chart is not intended to limit

Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '401 patent. Exhibit 18 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 18 that is mapped to the '401 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

209.    TP-Link also indirectly infringes the '401 patent by actively inducing infringement under 35 U.S.C. § 271(b). As an example, TP-Link advertises and encourages end users to utilize the '401 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

210.    TP-Link has had knowledge of the '401 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Alternatively, TP-Link has had knowledge of the '401 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

211.    Alternatively, TP-Link has had knowledge of the '401 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '401 patent and knew of its infringement, including by way of this lawsuit.

212.    TP-Link intended to induce patent infringement by third-party customers and users of the '401 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. TP-Link specifically intended and was aware that the normal and customary use of the '401 Accused

Products would infringe the '401 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '401 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '401 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '401 patent, including at least claim 1, and TP-Link further advertises the '401 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '401 patent.  On information and belief, TP-Link advertises all of the '401 Accused Products as complying with the 802.11ax Standard.[9]  By providing instruction and training to customers and end-users on how to use the '401 Accused Products in a manner that directly infringes one or more claims of the '401 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '401 patent.  TP-Link engaged in such inducement to promote the sales of the '401 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '401 Accused Products to infringe the '401 patent.  Accordingly, TP-Link has induced and continues to induce users of the '401 Accused Products to use the '401 Accused Products in their ordinary and customary way to infringe the '401 patent, knowing that such use constitutes infringement of the '401 patent.

213.    TP-Link also indirectly infringes the '401 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this

---

[9] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '401 Accused Products and causing the '401 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '401 Accused Products, such that the '401 patent is directly infringed.  The accused components within the '401 Accused Products are material to the invention of the '401 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '401 patent.  TP-Link has performed and continues to perform these affirmative acts with knowledge of the '401 patent and with intent, or willful blindness, that they cause the direct infringement of the '401 patent.

214.    As described above, TP-Link knew that NXP possessed patents, including the '401 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '401 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

215.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

216.     TP-Link is utilizing the technology claimed in the '401 patent without paying a reasonable royalty.  TP-Link is thus infringing the '401 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

217.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '401 patent.

218.     As a result of TP-Link's infringement of the '401 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

### COUNT VIII
### INFRINGEMENT OF U.S. PATENT NO. 10,200,096

219.     Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

220.     TP-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E;

Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'096 Accused Product(s)").

221.    TP-Link designs, makes, uses, sells, and/or offers for sale the '096 Accused Products in the United States.

222.    One or more TP-Link subsidiaries and/or affiliates use the '096 Accused Products in regular business operations.

223.    TP-Link has directly infringed and continues to directly infringe the '096 patent by, among other things, making, using, offering for sale, and/or selling the '096 Accused Products. The functionality recited in the '096 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '096 Accused Products infringe at least claim 1 of the '096 patent can be found in the chart attached hereto as Exhibit 19.

224.    The '096 Accused Products are available to businesses and individuals throughout the United States.

225.    The '096 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

226.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '096 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '096 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 19 applies each limitation of claim 1 of the '096 patent to the '096 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '096 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '096 patent.  Exhibit 19 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 19 that is mapped to the '096 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

227.    TP-Link also indirectly infringes the '096 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '096 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

228.    TP-Link has had knowledge of the '096 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '096 patent since at least April 15, 2025, when Velocity sent TP-Link a letter

explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

229.    Alternatively, TP-Link has had knowledge of the '096 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '096 patent and knew of its infringement, including by way of this lawsuit.

230.    TP-Link intended to induce patent infringement by third-party customers and users of the '096 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the '096 Accused Products would infringe the '096 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '096 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '096 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '096 patent, including at least claim 1, and TP-Link further advertises the '096 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '096 patent.  On information and belief, TP-Link advertises all of the '096 Accused Products as complying with the 802.11ax Standard.[10]  By providing instruction and training to customers and end-users on how to use the '096 Accused Products in a manner that directly infringes one or more claims of the '096 patent, including at

---

[10] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

least claim 1, TP-Link specifically intended to induce infringement of the '096 patent.  TP-Link engaged in such inducement to promote the sales of the '096 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '096 Accused Products to infringe the '096 patent.  Accordingly, TP-Link has induced and continues to induce users of the '096 Accused Products to use the '096 Accused Products in their ordinary and customary way to infringe the '096 patent, knowing that such use constitutes infringement of the '096 patent.

231.    TP-Link also indirectly infringes the '096 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '096 Accused Products and causing the '096 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '096 Accused Products, such that the '096 patent is directly infringed.  The accused components within the '096 Accused Products are material to the invention of the '096 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '096 patent.  TP-Link has performed and continues to perform these affirmative acts with knowledge of the '096 patent and with intent, or willful blindness, that they cause the direct infringement of the '096 patent.

232.    As described above, TP-Link knew that NXP possessed patents, including the '096 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '096 patent since at

least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

233.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

234.    TP-Link is utilizing the technology claimed in the '096 patent without paying a reasonable royalty.  TP-Link is thus infringing the '096 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

235.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '096 patent.

236.    As a result of TP-Link's infringement of the '096 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

### COUNT IX
### INFRINGEMENT OF U.S. PATENT NO. 8,238,859

237.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

238.    TP-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard") and are certified as such by the Wi-

Fi Alliance, including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'859 Accused Product(s)").

239.    TP-Link designs, makes, uses, sells, and/or offers for sale the '859 Accused Products in the United States.

240.    One or more TP-Link subsidiaries and/or affiliates use the '859 Accused Products in regular business operations.

241.    TP-Link has directly infringed and continues to directly infringe the '859 patent by, among other things, making, using, offering for sale, and/or selling the '859 Accused Products. The functionality recited in the '859 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '859 Accused Products infringe at least claim 1 of the '859 patent can be found in the chart attached hereto as Exhibit 20.

242.    The '859 Accused Products are available to businesses and individuals throughout the United States.

243.    The '859 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

244.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '859 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '859 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 20 applies each limitation of claim 1 of the '859 patent to the '859 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '859 Accused Products obtained through discovery.   This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '859 patent.  Exhibit 20 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 20 that is mapped to the '859 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

245.    TP-Link also indirectly infringes the '859 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '859 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

246.    TP-Link has had knowledge of the '859 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '859 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

247.    Alternatively, TP-Link has had knowledge of the '859 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '859 patent and knew of its infringement, including by way of this lawsuit.

248.    TP-Link intended to induce patent infringement by third-party customers and users of the '859 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the '859 Accused Products would infringe the '859 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '859 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '859 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '859 patent, including at least claim 1, and TP-Link further

advertises the '859 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '859 patent.  On information and belief, TP-Link advertises all of the '859 Accused Products as complying with the 802.11ax Standard.[11]  By providing instruction and training to customers and end-users on how to use the '859 Accused Products in a manner that directly infringes one or more claims of the '859 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '859 patent.  TP-Link engaged in such inducement to promote the sales of the '859 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '859 Accused Products to infringe the '859 patent.  Accordingly, TP-Link has induced and continues to induce users of the '859 Accused Products to use the '859 Accused Products in their ordinary and customary way to infringe the '859 patent, knowing that such use constitutes infringement of the '859 patent.

249.    TP-Link also indirectly infringes the '859 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '859 Accused Products and causing the '859 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '859 Accused Products, such that the '859 patent is directly infringed.  The accused components within the '859 Accused Products are material to the invention

---

[11] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

of the '859 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '859 patent.   TP-Link has performed and continues to perform these affirmative acts with knowledge of the '859 patent and with intent, or willful blindness, that they cause the direct infringement of the '859 patent.

250.    As described above, TP-Link knew that NXP possessed patents, including the '859 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '859 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

251.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.   At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.   TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

252.    TP-Link is utilizing the technology claimed in the '859 patent without paying a reasonable royalty.   TP-Link is thus infringing the '859 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

253.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '859 patent.

254.    As a result of TP-Link's infringement of the '859 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

### COUNT X
### INFRINGEMENT OF U.S. PATENT NO. 8,265,573

255.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

256.    TP-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard") with the 6E extension, including but not limited to the following products: Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE550; Archer BE600; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE3600; Archer BE9300; Archer GE650; Archer GE800; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TXE72E; Archer TXE75E; AXE16000; AXE5300; AXE5400; AXE7800; AXE11000; BE5000; BE9700; BE11000; BE14000; BE15000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; Festa F76; RE235BE; RE653BE; RE655BE; RE813XE; and RE815XE (collectively, the "'573 Accused Product(s)").

257.    TP-Link designs, makes, uses, sells, and/or offers for sale the '573 Accused Products in the United States.

258.    One or more TP-Link subsidiaries and/or affiliates use the '573 Accused Products in regular business operations.

259.    TP-Link has directly infringed and continues to directly infringe the '573 patent by, among other things, making, using, offering for sale, and/or selling the '573 Accused Products. The functionality recited in the '573 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '573 Accused Products infringe at least claim 12 of the '573 patent can be found in the chart attached hereto as Exhibit 21.

260.    The '573 Accused Products are available to businesses and individuals throughout the United States.

261.    The '573 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

262.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '573 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '573 patent, including at least claim 12 pursuant to 35 U.S.C. § 271(a).  Exhibit 21 applies each limitation of claim 12 of the '573 patent to the '573 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '573 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '573 patent.  Exhibit 21 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 21 that is mapped to the '573 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

263.    TP-Link also indirectly infringes the '573 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize

the '573 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

264.    TP-Link has had knowledge of the '573 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '573 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

265.    Alternatively, TP-Link has had knowledge of the '573 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '573 patent and knew of its infringement, including by way of this lawsuit.

266.    TP-Link intended to induce patent infringement by third-party customers and users of the '573 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '573 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '573 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '573 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '573 patent, including at least claim 12, and TP-Link further advertises the '573 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '573 patent.  On information and belief, TP-Link advertises all of the

'573 Accused Products as complying with the 802.11ax Standard.[12]  By providing instruction and training to customers and end-users on how to use the '573 Accused Products in a manner that directly infringes one or more claims of the '573 patent, including at least claim 12, TP-Link specifically intended to induce infringement of the '573 patent.  TP-Link engaged in such inducement to promote the sales of the '573 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '573 Accused Products to infringe the '573 patent.  Accordingly, TP-Link has induced and continues to induce users of the '573 Accused Products to use the '573 Accused Products in their ordinary and customary way to infringe the '573 patent, knowing that such use constitutes infringement of the '573 patent.

267.    TP-Link also indirectly infringes the '573 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '573 Accused Products and causing the '573 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '573 Accused Products, such that the '573 patent is directly infringed.  The accused components within the '573 Accused Products are material to the invention of the '573 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '573 patent.  TP-Link has performed and continues to perform these affirmative acts with

---

[12] *See, e.g.*, *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

knowledge of the '573 patent and with intent, or willful blindness, that they cause the direct infringement of the '573 patent.

268.    As described above, TP-Link knew that NXP possessed patents, including the '573 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '573 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

269.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

270.    TP-Link is utilizing the technology claimed in the '573 patent without paying a reasonable royalty.  TP-Link is thus infringing the '573 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

271.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '573 patent.

272.    As a result of TP-Link's infringement of the '573 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's

infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## COUNT XI
## INFRINGEMENT OF U.S. PATENT NO. 9,596,648

273.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

274.    TP-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE16000; AXE7800; AXE5300; AXE5400; AXE11000; BE5000; BE9700; BE14000; BE15000; BE11000; BE19000; BE22000; BE24000; BE33000; Deco BE65; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco XE75; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP773; EAP780; EAP783; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76;

PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X (collectively, the "'648 Accused Product(s)").

275.    TP-Link designs, makes, uses, sells, and/or offers for sale the '648 Accused Products in the United States.

276.    One or more TP-Link subsidiaries and/or affiliates use the '648 Accused Products in regular business operations.

277.    TP-Link has directly infringed and continues to directly infringe the '648 patent by, among other things, making, using, offering for sale, and/or selling the '648 Accused Products. The functionality recited in the '648 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '648 Accused Products infringe at least claim 1 of the '648 patent can be found in the chart attached hereto as Exhibit 22.

278.    The '648 Accused Products are available to businesses and individuals throughout the United States.

279.    The '648 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

280.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '648 Accused Products, TP-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '648 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).   Exhibit 22 applies each limitation of claim 1 of the '648 patent to the '648 Accused Products.   Velocity provides this infringement analysis without the benefit of information about the '648 Accused Products obtained through discovery.   This chart is not intended to limit

Velocity's right to modify the chart or allege that other activities of TP-Link infringe the identified claim or any other claims of the '648 patent.  Exhibit 22 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 22 that is mapped to the '648 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

281.    TP-Link also indirectly infringes the '648 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, TP-Link advertises and encourages end users to utilize the '648 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

282.    TP-Link has had knowledge of the '648 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, TP-Link has had knowledge of the '648 patent since at least April 15, 2025, when Velocity sent TP-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting TP-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

283.    Alternatively, TP-Link has had knowledge of the '648 patent since at least service of this Complaint or shortly thereafter, and TP-Link knew of the '648 patent and knew of its infringement, including by way of this lawsuit.

284.    TP-Link intended to induce patent infringement by third-party customers and users of the '648 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  TP-Link specifically intended and was aware that the normal and customary use of the '648 Accused

Products would infringe the '648 patent.  TP-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '648 patent and with the knowledge that the induced acts would constitute infringement.  For example, TP-Link provides the '648 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '648 patent, including at least claim 1, and TP-Link further advertises the '648 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '648 patent.  On information and belief, TP-Link advertises all of the '648 Accused Products as complying with the 802.11ax Standard.[13]  By providing instruction and training to customers and end-users on how to use the '648 Accused Products in a manner that directly infringes one or more claims of the '648 patent, including at least claim 1, TP-Link specifically intended to induce infringement of the '648 patent.  TP-Link engaged in such inducement to promote the sales of the '648 Accused Products, e.g., through TP-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '648 Accused Products to infringe the '648 patent.  Accordingly, TP-Link has induced and continues to induce users of the '648 Accused Products to use the '648 Accused Products in their ordinary and customary way to infringe the '648 patent, knowing that such use constitutes infringement of the '648 patent.

285.    TP-Link also indirectly infringes the '648 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this

---

[13] *See, e.g.*, *Archer AX55*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/v1/ (last accessed June 2025); *Archer AXE300*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/wifi-router/archer-axe300/ (last accessed June 2025) ("Our Fastest Wi-Fi 6E and Wi-Fi 6 Router to Date"); *Deco XE75*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/deco-mesh-wifi/product-family/deco-xe75/ (last accessed June 2025); *RE813XE*, TP-LINK WEBSITE, *available at*: https://www.tp-link.com/us/home-networking/range-extender/re813xe/ (last accessed June 2025).

District and elsewhere in the United States.  TP-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '648 Accused Products and causing the '648 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '648 Accused Products, such that the '648 patent is directly infringed.  The accused components within the '648 Accused Products are material to the invention of the '648 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by TP-Link to be especially adapted for use in infringement of the '648 patent.  TP-Link has performed and continues to perform these affirmative acts with knowledge of the '648 patent and with intent, or willful blindness, that they cause the direct infringement of the '648 patent.

286.    As described above, TP-Link knew that NXP possessed patents, including the '648 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. TP-Link has also known that Velocity was the owner by assignment of the '648 patent since at least April 15, 2025, when Velocity sent a letter to TP-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

287.    TP-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to TP-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, TP-Link willfully blinded itself to its infringement of the patents-in-suit.  TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

288.    The '648 patent is well-known within the industry as demonstrated by multiple citations to the '648 patent in published patents and patent applications assigned to technology companies and academic institutions.  TP-Link is utilizing the technology claimed in the '648 patent without paying a reasonable royalty.  TP-Link is infringing the '648 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

289.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '648 patent.

290.    As a result of TP-Link's infringement of the '648 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for TP-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by TP-Link together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Velocity respectfully requests that this Court enter:

A.    A judgment in favor of Plaintiff that TP-Link has infringed, either literally and/or under the doctrine of equivalents, the '570, '213, '832, '343, '870, '765, '401, '096, '859, '573, and '648 patents;

B.    An award of damages resulting from TP-Link's acts of infringement in accordance with 35 U.S.C. § 284;

C.    A judgment and order finding that TP-Link's infringement was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate within the meaning of 35 U.S.C. § 284 and awarding enhanced damages to Plaintiff.

D.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding reasonable attorneys' fees to Plaintiff against TP-Link.

E.     Any and all other relief to which Plaintiff may show itself to be entitled.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Velocity requests a trial by jury of any issues so triable by right.

Dated:  July 9, 2025

Respectfully submitted,

*/s/  Daniel P. Hipskind*
Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
Erin E. McCracken (CA SB No. 244523)
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com
E-mail: eem@bergerhipskind.com

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com

*Attorneys for Velocity Communication Technologies, LLC*